[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a petition for a new trial instituted by an inmate of the state correctional institution as a result of his conviction of six charges (not four as he alleges in his CT Page 8232 petition). The petitioner is presently serving an effective sentence of 22 years having been sentenced on April 17, 1992.
The petitioner was given at least one continuance to enable him to obtain counsel but he was not successful. Consequently, the court attempted to explain to him the nature of this procedure and also the risks it might entail for him since he has an appeal pending and his claims in this proceeding appeared to the court to be more properly addressed in a habeas corpus petition. The petitioner nevertheless decided to proceed and to represent himself.
 I.
The petitioner's first claim is that his trial counsel "was incompetent due to the influence of a mind altering drug (Percocet). . . ." It is his contention that he did not receive adequate representation from his counsel because of the "side effects experience (sic) from the taking of the drug."
The sum total of the evidence in support of the petitioner's conclusion that his counsel was under the influence of Percocet consists of his own statements. First, he and a friend of his saw the attorney take a half of a tablet. This occurred in the attorney's office. Then, he relates he saw the attorney "take it on other days". He is not sure of the day nor how much he was taking.
The attorney in question denied the use of this drug during the petitioner's criminal trial and stated he had discussed the matter with the trial judge and he agreed he would not use the drug during trial. On the only day his neck pain was severe, a early recess was taken to avoid any problem.
The petitioner also argues that the failure of the attorney to act as he felt he should reflected inadequate representation. Unfortunately, most of the petitioner's theories do not hold together under court scrutiny.
For example, the petitioner alleged that the complaining witness against him on the robbery charge was not cross examined on inconsistencies between her statement to the police and her testimony. Specifically, he wanted her to be asked why she first told the police she did not know her assailant when she did know him prior to the robbery. Apparently the petitioner was not paying close attention during his trial because this subject was covered both on direct examination and by petitioner's trial counsel on cross examination. Ex. 1, Page 34 et seq.
The petitioner suggests that his counsel should have CT Page 8233 developed "the conflict of interest" that prevailed when Yale-New Haven Hospital doctor described the injuries allegedly inflicted by a Yale University police officer. The court is at loss to understand what probative value this would have in the trial.
The argument was also made that trial counsel should have cross examined the robbery victim as to consideration she may have received from the state on her pending charges in return for her testimony. While this may be a valid tactic where the motive of a witness to testify is suspect, one can only conjecture as to how the jury would have reacted to such an attack on this robbery victim. Interestingly enough, the victim had no charges pending so this claim would appear to be of no substance whatsoever.
It is significant that neither of the assistant state's attorneys who prosecuted this case saw anything in the behavior of petitioner's counsel to suggest he was under the influence of Percocet or anything else.
In light of these observations, the lack of evidence from the petitioner, trial counsel's testimony, the fact that the trial judge apparently observed nothing to warrant his intercession and it is the finding of the court that the petitioner has not proved the allegation of the first count. Further, the court finds that trial counsel was not under the influence of Percocet or any other drug or substance in the course of the trial.
 II.
The petitioner asserts a separate claim in his second count that his attorney failed "to obtain and enter into evidence medical documents that could have assisted in his defense in proving plaintiff innocence (sic)."
The court had to inquire of the petitioner in order to figure out what this claim entailed. It has absolutely no relevance to the robbery and burglary charges and is only remotely relevant to the assault charges pertaining to the police officers. The petitioner's theory is that in his scuffle with the police whom he says he did not know to be police, he was badly injured about the head. This information (if true) would he asserts, show he acted in self defense.
This theory ignores the stab would he inflicted on one officer and the testimony of another officer who described being struck repeatedly by the petitioner.
When questioned about this allegation trial counsel stated CT Page 8234 the petitioner had told him about the medical reports he had. He told his attorney they were in support of a police abuse claim but this was only mentioned after the defense had rested Counsel did raise the self defense claim and was successful in getting the court to charge on it. (The petitioner apparently missed this point also as he indicated he didn't hear it or remember it).
The allegation in the second count, even if as stated by the petitioner, is of dubious significance and in no way could it be construed as a complete defense.
 III.
While the court in the preceding discussion has dealt with the drug allegation and specific examples of alleged ineffective assistance of counsel, it is appropriate for the court to deal with the overall issue of adequate representation.
It should be noted at the onset that the evidence against this petitioner in this trial was overwhelming. He was identified by the robbery victim who had known him previously. Two police officers then apprehend him in a motor vehicle he was burglarizing. After the fight with the police officers, the petitioner fled, returning to the area where the robbery had occurred and where he was apprehended.
The petitioner's statement that he did not know the person on either side of the car were police officers is incredulous. Who else would be responding to the scene of a forcible entry of a motor vehicle? Each officer claimed to have identified himself, one officer's badge was ripped off the holder. It had been worn on his chest.
In the course of his representation of this petitioner defense counsel saw him at the correctional center four or five times until he was released on bond. It then became necessary for counsel to go to his residence to contact him. The petitioner failed to keep three appointments with him. It was necessary for the attorney to go to his residence to get the petitioner to visit the scene so photographs could be arranged for.
During trial the petitioner was consulted regularly and was asked to write down any questions he wished to have asked. From a reading of the transcripts of the testimony of the robbery victim and Officer Kraszewski, it is the court's conclusion that the defense attorney cross examined appropriately and made timely objections. To be candid, he made the most of a bad situation. CT Page 8235
The court concludes that this petitioner received adequate assistance of counsel, that he had no identifiable viable defenses, and that he was in no way prejudiced by the representation he received.
CONCLUSION
In view of the foregoing, the petition for a new trial is denied.
ANTHONY V. DeMAYO, JUDGE.